UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GREGORY STEVEN DUNCAN, *ET AL.*,

    Appellants,

VERSUS

Nos. 3:17-cv-01807-JWD-EWD (Lead);
3:17-cv-01810-JWD-EWD (Member)

SCOTT DAVID HEINRICH, *ET AL.*,

    Appellees.

# RULING AND ORDER ON APPEALS OF ORDERS ISSUED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

## I. INTRODUCTION

Before this Court are appeals of December 13, 2017 oral rulings, subsequently memorialized in minute orders, by the United States Bankruptcy Court for the Middle District of Louisiana in favor of Scott David Heinrich and Brandon Heinrich ("Appellees") and against Gregory Steven Duncan ("Duncan"), Suzanne Alvine Simoneaux ("Simoneaux"), and Louisiana Towing and Recovery, LLC ("Louisiana Towing" and, collectively, "Appellants"). (*See* Docs. 1, 2; *see also* Doc. 13 ("Hrg. Tr.")).[1] The parties have filed initial briefs, (Docs. 15, 16), and reply briefs, (Docs. 17, 18). Oral argument is not necessary. For reasons explained below, this Court AFFIRMS the appealed rulings.

---

[1] Unless otherwise noted, record citations in this Ruling and Order are to document numbers in the lead case on appeal, *Duncan v. Heinrich,* 3:17-cv-01807-JWD-EWD.

LAMB - Certified

## II. BACKGROUND

### A. Factual and Procedural History

On July 12, 2016, Duncan and Simoneaux filed a voluntary petition for Chapter 7 bankruptcy. *In re Duncan*, 16-bk-10810 ("Bankruptcy Petition"), Doc. 1.[2] In October 2016, bankruptcy trustee Samera Abide moved to employ Steven Lemoine as "general counsel for the estate, including but not necessarily limited to investigation and pursing [sic] potential property of the estate that require such legal services." *Id.*, Doc. 32. The bankruptcy court granted the request, appointing Lemoine "as attorney and general legal counsel for the estate under 11 U.S.C. § 327[.]" *Id.*, Doc. 35.

On November 15, 2016, Abide moved to sell Duncan and Simoneaux's membership interest in LA-1 Towing and Recovery, L.L.C. ("LA-1") "to insiders free and clear of encumbrances." *Id.*, Doc. 54. According to that motion, one of the assets of the bankruptcy estate was Duncan and Simoneaux's collective 50% share of LA-1, with Appellees holding the remaining 50%. *Id.* The motion characterized Appellees' membership interest as a "fairly recent development" memorialized in a March 16, 2016 operating agreement. *Id.* The motion further stated that, upon finding out about the bankruptcy proceeding, Appellees had contacted Abide to offer to purchase Duncan and Simoneaux's interest. *Id.* The motion stated that Abide had accepted Appellees' offer, subject to court approval. *Id.* In an order signed December 14, 2016, the bankruptcy court granted the motion and authorized Abide to conduct the sale. *Id.*, Doc. 65. Pursuant to the bankruptcy court's order, the sale was "without any warranty or recourse whatsoever, express or implied, as to the condition thereof, and without any warranty whatsoever,

---

[2] Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice. Fed. R. Evid. 201; *Porter v. Ollison*, 620 F.3d 952, 954-55 n.1 (9th Cir. 2010); *Wilson v. McVey*, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

against redhibitory or hidden or latent vices and defects (not fit for the use intended) on the part of the trustee, not even for a return of the purchase price, and without any representations of warranty, express or implied, whatsoever of any kind as to any matter, but with full substitution and subrogation to all rights and actions of warranty against all preceding owners, vendors or mortgagors of the property[.]" *Id.* The bankruptcy petition was discharged on March 8, 2017. *Id.*, Doc. 79. By its terms, the order of discharge did not "close or dismiss" the case, but rather meant "that no one may make any attempt to collect a discharged debt from the debtors personally." *Id.*

In August 2017, Appellees filed a suit in state court against Duncan, Simoneaux, and Louisiana Towing. *See Heinrich, et al. v. Duncan, et al.*, 17-ap-01039 ("Adversary Proceeding"), Doc. 1-1 at 6-9. The petition for damages first alleged that LA-1 had been "created" in October 2015 by Duncan and Simoneaux and that, in May 2016, Appellees and "Defendant" had executed an operating agreement to "establish the business principles for LA-1[.]" *Id.* at 6. The petition for damages contended that Duncan, acting as manager of LA-1, had breached the agreement and his fiduciary duties, committed fraud and conversion, tortiously interfered with contracts, conspired with Simoneaux, and violated the Louisiana Unfair Trade Practices and Consumer Protection Act. *Id.* at 6-7. Particularly, the suit claimed that Duncan was "grossly negligent" in managing LA-1, secretly using company funds for personal purposes, and that he and Simoneaux had transferred assets, property, and funds from LA-1 to Louisiana Towing, a "virtually identical new and competing business enterprise" recorded with the Secretary of State on September 15, 2016, and subsequently sold their interests in LA-1 to Appellees having concealed the aforementioned "theft[s]." *Id.* at 7-8. Appellees claimed that they had dissolved LA-1 in April 2017. *Id.* at 8.

In September 2017, Duncan and Simoneaux removed the state court suit to federal court, citing 28 U.S.C. § 1452(a) and contending that the state court suit "involv[ed] claims made and

property transferred in this bankruptcy proceeding." *Id.*, Doc. 1 at 1-2. The notice of removal maintained that the state court suit involved "allegations of tortious and fraudulent actions . . . which occurred before the discharge granted by this court . . . and which alleged obligations, if true, would be discharged by the court's order of March 8, 2017." *Id.* at 3. Appellees moved to abstain and/or remand to state court, arguing principally that the bankruptcy court lacked jurisdiction and was required to abstain. *Id.*, Docs. 5 & 6. Appellees further argued that permissive abstention was appropriate. *Id.* Appellants opposed, arguing first that the state court petition "cites alleged conduct of [Duncan and Simoneaux] as far back as October 22, 2015[.]" *Id.,* Doc. 22 at 2. Appellants also argued that, after the bankruptcy petition was filed and before the sale, Lemoine undertook an investigation of "alleged 'fraud'" in connection with the sale of Duncan and Simoneaux's interests in LA-1. *Id.* at 3-4. Appellants also contended that Appellees had "complete access" to LA-1's records at the relevant time. *Id.* at 4-5. Appellants noted that it was "impossible" to tell from the state court petition which claims were based on actions occurring before the bankruptcy petition was filed. *Id.* at 5. Appellants argued that permitting remand would "allow the state court to question whether the bankruptcy court had made the correct decision and whether [Abide] bears responsibility for those [sic] decisions." *Id.*

Duncan and Simoneaux also filed a Motion for Contempt of Bankruptcy Court and Sanctions, arguing that the state court suit was filed in "willful violation of an order of [the bankruptcy] court involving claims made and property transferred in this bankruptcy proceeding." Bankruptcy Petition, Doc. 100. Appellees objected, arguing that the suit sought damages only for acts committed after the bankruptcy petition was filed, although their pleading did not "plainly state that fact." *Id.*, Doc. 106. Appellees subsequently filed a supplemental brief and exhibits

identifying conduct undergirding their claims that occurred after the bankruptcy petition was filed. *Id.*, Docs. 116 & 116-1.

On December 13, 2017, the bankruptcy court heard argument on the Motion to Remand and the Motion for Contempt and Sanctions. (*See* Hrg. Tr. at 1). With respect to the Motion for Contempt and Sanctions, Appellants' counsel contended that Appellees had violated the automatic stay that was effective as of the bankruptcy petition's filing date or the permanent injunction that replaced it following the discharge. (*Id.* at 4-5). Appellants' counsel observed that "the issue in this case may be pre-petition claims versus post-petition claims" and argued that the allegations in the state court suit were "general and vague." (*Id.* at 5). Appellants' counsel also said that "the issue here . . . relate[d] to an objection to the sale of the assets of the estate." (*Id.*). Appellants' counsel also argued that "the interests of the debtors were in the bankruptcy estate" and that Lemoine had investigated "claims of fraud and the possibility that there were assets of LA-1 transferred to, to another company[.]" (*Id.* at 6-7). The bankruptcy court confirmed that Appellants had not objected to the sale or appealed from it when it occurred. (*Id.* at 8). Appellants' counsel also argued that the state court suit "willfully attacked . . . [Abide's] tacit approval" of the sale, contravening the goals of bankruptcy proceedings. (*Id.* at 9). In response to court questioning, Appellants' counsel reiterated that "the basis for bankruptcy court jurisdiction" was Appellees' "attack on" the bankruptcy court's judgment and sale. (*Id.* at 10).

During his argument, Appellees' counsel admitted that the state court petition was "thin" and reiterated that the state court suit sought recovery only for post-petition claims and was also not attacking the "sale order." (*Id.* at 11-12). Appellees' counsel argued that, during the sale, Appellees had acquired LA-1's claims concerning "whatever occurred within LA-1," *i.e.*, the alleged transfer of LA-1's assets, property, and funds, and that these were not claims of the estate.

(*Id.* at 12-14). Appellees' counsel acknowledged that Appellees had not yet filed an amended petition in state court but stated that they were holding off on doing so until the removal and remand issues were resolved. (*Id.* at 13-14). In reply, Appellants' counsel emphasized his concern that a state court judge might review whether the bankruptcy court or Abide's actions were "right." (*Id.* at 16).

The bankruptcy court orally denied the Motion for Contempt and Sanctions, noting that Appellees' counsel had repeatedly and consistently clarified that the state court suit challenged only post-petition conduct and that, as a result, the claims in the state court suit had not been discharged in bankruptcy. (*Id.* at 21-23).

In support of the Motion to Remand, Appellees' counsel reiterated that Appellees' claims were claims "of LA-1" arising post-petition and, for many of the same reasons addressed *supra*, adjudication of those claims would have no effect on the administration of any bankruptcy estate. (*Id.* at 24-26). Appellants' counsel similarly reiterated that the state court suit would permit the state court to review the actions of the bankruptcy court and Abide. (*Id.* at 27-28). Appellants' counsel acknowledged during argument, however, that there was "no objection and the sale [was] final[.]" (*Id.* at 28). He argued, however, that under state law a possible remedy for a "fraudulent sale is the rescission of that sale." (*Id.* at 31).

The bankruptcy court granted the Motion to Remand, observing initially that Duncan and Simoneaux "did not oppose [Abide's] motion to sell their membership interest in LA-1 to [Appellees]" and did not appeal the order approving the sale to Appellees, and Appellees did not name Abide as a defendant in the state court suit or seek the bankruptcy court's permission to do so. (*Id.* at 31, 35). The bankruptcy court also characterized the state court suit as attacking only post-petition actions by Duncan and Simoneaux. (*Id.* at 35-36). On that basis, the bankruptcy

court concluded that it lacked jurisdiction, as the state court suit raised only state law claims unrelated to administration of the bankruptcy estate. (*Id.* at 36-37). The bankruptcy court ruled that, although LA-1's interest was property of the estate at the time of Duncan and Simoneaux's alleged wrongful acts, it no longer was, and the estate had "no claim arising out of the alleged misconduct." (*Id.* at 38). The bankruptcy court also noted that Duncan and Simoneaux had received a discharge in bankruptcy, and their pre-petition liabilities were "gone." (*Id.*). The bankruptcy court further ruled that "discretional" or "permissive" abstention and remand for equitable reasons was appropriate under 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452. (*Id.* at 39-40).

The bankruptcy court issued minute entries consistent with its oral rulings. Adversary Proceeding, Doc. 26; Bankruptcy Petition, Doc. 120. Appellants filed notices of appeal in both proceedings on December 27, 2017. Adversary Proceeding, Doc. 30; Bankruptcy Petition, Doc. 124.

**B.   Parties' Arguments**

**1.   Appellants' Brief**

According to Appellants, "[t]he ultimate issue to be decided is whether the [bankruptcy court] erred by finding as a matter of law that [it] lacked jurisdiction over a suit filed in state court attacking a court approved bankruptcy trustee's sale of estate property." (Doc. 16 at 6). Appellants contend that the bankruptcy court's rulings amount to "the allowance of claims against the debtor for actions of [Abide], which occurred during the administration of the estate." (*Id.*). Appellants argue that a debtor "is not a part of those proceedings and therefore cannot be held liable or sued [because] the purchaser is unhappy with what he bought." (*Id.*). Appellants maintain that the bankruptcy court's ruling "imputes the actions of the [t]rustee and the [bankruptcy court] onto the

debtors and allows creditors a way around the discharge and permanent injunction following closure of the case contrary to the intent of Congress and purpose of the bankruptcy code." (*Id.* at 8-9). Appellants reiterate that the sale occurred subsequent to "the appointment of an attorney to investigate allegations of fraud by [Duncan and Simoneaux]," and that "attacking the court approved [t]rustee sale" is a violation of the permanent injunction effective after discharge. (*Id.* at 9). Appellants argue that the bankruptcy court's rulings allow Appellees to "undo the sale" even after an investigation. (*Id.* at 13).

Appellants further maintain that they believed that Abide and Lemoine's involvement "protected and insulated them from any irregularities of the sale and its process." (*Id.*). Appellants claim that "[t]he issue is not pre or post-petition actions of the debtors," but rather "whether the bankruptcy code protects the debtors from transactions taken during [Abide's] administration and distribution of the assets of the estate." (*Id.* at 14). Appellants emphasize that they were not "parties to the act of sale" or "liable to the purchasers of estate assets," notwithstanding assertions in the state court petition that Duncan and Simoneaux "in bad faith sold their interests to [Appellees][.]" (*Id.* at 15); *see also* Adversary Proceeding, Doc. 1-1 at 8. Appellants state that they do not object to the sale, but rather to "being forced to defend in state court, the actions of [Abide] and the [bankruptcy court] itself[.]" (Doc. 16 at 16). Appellants appear to argue that the bankruptcy court had jurisdiction over the state court suit as a "core proceeding" involving either the administration of the estate or approval of the sale of property under 28 U.S.C. § 157. (*Id.* at 17-18).

### 2. Appellees' Brief

Preliminarily, Appellees' brief addresses several "issues to be presented" that Appellants initially identified in these appeals but did not address in their brief. (*See* Doc. 4 at 3-8). The Court discusses only those arguments responsive to arguments actually made in Appellants' brief.

Appellees contend that the state court suit is not "related to" a bankruptcy case as contemplated by 28 U.S.C. § 1334 because the state-law causes of action concerning post-petition conduct raised therein will have no effect on the bankruptcy estate. (Doc. 15 at 12-13). Similarly, Appellees argue that the automatic stay and permanent injunction do not apply to these post-petition claims. (*Id.* at 16-17). Appellees also maintain that the "substitution and subrogation" portion of the sale order relinquished to Appellees any rights that the bankruptcy estate or Abide may have had in LA-1's claims. (*Id.* at 19). Appellees reiterate that they have not attempted to "rescind or attack" the sale. (*Id.*).

### 3. The Parties' Replies

Appellants' Reply analyzes *In re Wood*, 825 F.2d 90 (5th Cir. 1987), arguing that *Wood* held that a complaint raising "post-petition claims of misappropriation of funds" was sufficiently "related to" a bankruptcy proceeding to give rise to jurisdiction. (Doc. 17 at 4-5). Appellants also argue that the automatic stay and permanent injunction are "meaningless" if debtors can be found liable for a "defective sale" to which they were not a party. (*Id.* at 17). Appellees' Reply argues that they do not seek rescission of the sale and that the state court suit does not concern the administration of the estate. (Doc. 18 at 4-6).

## III. DISCUSSION

### A. This Court's Jurisdiction and Standard of Review

This Court's jurisdiction is based upon 28 U.S.C. § 1334 and 28 U.S.C. § 158. In an appeal from a bankruptcy court order, "the bankruptcy court's factual findings are reviewed for clear error; its legal conclusions and mixed questions of fact and law, *de novo*." *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001). The clear error standard does not apply, however, to findings of fact resulting from application of an incorrect legal standard. *See In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. 1991) (relying on *In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 209 (5th Cir. 1983)).

### B. Relevant Law

### 1. Bankruptcy Jurisdiction and Permissive Abstention

The primary issue in this case is whether the bankruptcy court correctly determined that it lacked jurisdiction over the claims in the state court suit. (Doc. 16 at 6; Hrg. Tr. at 38-39). Removal of a civil action to a bankruptcy court is governed by 28 U.S.C. § 1452(a), which permits removal of a claim or cause of action over which a district court has jurisdiction under 28 U.S.C. § 1334. The Court therefore turns to the provisions of 28 U.S.C. § 1334, keeping in mind that: (1) removal statutes are generally strictly construed because removal "implicates important federalism concerns"; (2) doubts concerning removal are resolved against removal and in favor of remand; and (3) removing parties bear the burden of demonstrating federal jurisdiction. *See, e.g., In re Kevco, Inc.*, 309 B.R. 458, 462 (Bankr. N.D. Tex.), *aff'd sub nom. Pam Capital Funding, L.P. v. Nat'l Gypsum Co.*, 2003 WL 23784080 (N.D. Tex. Sept. 30, 2003), *aff'd sub nom. In re Kevco Inc.*, 113 F. App'x 29 (5th Cir. 2004).

With exceptions not relevant here, federal district courts have original jurisdiction over "all cases under title 11," 28 U.S.C. § 1334(a), and "all civil proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(b). It is not generally necessary to distinguish among the various subprovisions of 28 U.S.C. § 1334(b) to determine whether a particular matter "falls within bankruptcy jurisdiction"; "[t]hese references operate conjunctively to define the scope of jurisdiction[,]" and "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Wood*, 825 F.2d at 93; *see also id.* at 92 (clarifying that 28 U.S.C. § 1334(a), granting original jurisdiction over "cases under title 11," refers "merely to the bankruptcy petition itself"). A proceeding is "related to" a case under title 11 if the outcome of that proceeding "could *conceivably* have any effect on the estate being administered in bankruptcy." *Id.* (emphasis in *Wood*); *see also In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) ("For jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate[;]" "related to" is a "term of art" in bankruptcy jurisdiction).

"Related to" jurisdiction is intended to be "comprehensive" but not "limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995); *see also* 1 Norton Bankr. L. & Prac. 3d § 4:97 (2018) (observing that, had Congress intended "related to" jurisdiction to encompass any proceeding in which a debtor is a party, it could have so specified); *but see In re Jeffers*, 2001 WL 96401, at *3 (E.D. La. Feb. 2, 2001) (dispute that directly implicates the financial obligations of a debtor is typically sufficiently "related to" a debtor's bankruptcy proceedings to give rise to jurisdiction). It can extend to encompass even "attenuated, hypothetical effects of third party litigation." *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 305 (5th Cir. 2013) ("related to" jurisdiction existed where, if a suit were successful and permitted recovery against guarantees and a certificate of

deposit, recovery would "presumably" diminish the plaintiff's claim against the bankruptcy estate, "conceivably" allowing a greater recovery for other unsecured creditors).

The timing of a proceeding or claim may be significant, however. Particularly, disputes concerning property which has left the estate may lose their relationship to the case. 1 Norton Bankr. L. & Prac. 3d § 4:103 (2018); *see also In re Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990) ("The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property."); *In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989) ("Central Transit obtained the property from Hall's in a sale permitted by the bankruptcy trustee and affirmed by the bankruptcy court after the rezoning had occurred. Consequently, the property passed from Hall's estate to Central Transit and, moreover, out of the bankruptcy court's jurisdiction. The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."); *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) ("[W]e do not agree that the bankruptcy court has 'related to' jurisdiction because FedPak seeks a determination of the rights of Jones and Polar Express in property that passed outside of the court's control when the property was sold in 1992." (citations omitted)); *cf. Matter of Pan Am. Sch. of Travel Inc.*, 47 B.R. 242, 244-45 (Bankr. S.D.N.Y. 1985) (in Chapter 11 case, entity's trademark infringement and unfair competition suit against debtor for injunctive relief was not "related proceeding" because, *inter alia*, any "relationship to estate administration" ended upon entry of an order of confirmation); *In re Gold*, 247 B.R. 574, 578 (Bankr. D. Mass. 2000) ("related to" jurisdiction existed because, *inter alia*, property subsequently sold in foreclosure had still been part of the bankruptcy estate when complaint was filed and answer was due; distinguishing *Lemco Gypsum* and *Hall's Motor Transit Co.* on this basis); *Perry v. First Nat. Bank of Jefferson*, 1993 WL 310490, at *2 (E.D. La. Aug. 10, 1993) (suits could

"'conceivably' have had an effect on the Perrys' estate at the time they were removed from state court, as the Bankruptcy Court had not yet confirmed the bankruptcy trustee's abandonment of its interest in the lawsuits"); *Tschirn v. Secor Bank*, 123 B.R. 215, 218 (E.D. La. 1991) ("In this case, the Bankruptcy Trustee, Carl Dengel, made a written abandonment of the lender liability claims that is filed in the record. . . . The bankruptcy judge then signed an order approving the abandonment. A hearing was not requested. Thus, since the record reflects that the abandonment was made in an informed, procedurally-correct manner, the abandonment is irrevocable. Hence, Tschirn's lender liability suit is not part of his bankruptcy estate and is therefore not 'related to' his bankruptcy proceedings."); *In re Bobroff*, 43 B.R. 746, 751 (E.D. Pa. 1984), *aff'd*, 766 F.2d 797 (3d Cir. 1985) (debtor's suit against creditor and its agents for defamation and interference with contractual relations was based on events following the filing of the bankruptcy petition, and his causes of action were not property of the bankruptcy estate; although suit was related to bankruptcy petition "in a literal sense," "related to" jurisdiction did not exist because recovery would have no effect on the estate, debtor's claims were "wholly subject" to state law, and there was no non-bankruptcy-related basis for federal jurisdiction).

In applying the "conceivable effect" test, a court should not determine whether the claim at issue has any merit. 1 Collier on Bankruptcy ¶ 3.01(3)(e)(ii) (2018). The only issue is whether the claim is "colorable," *i.e.*, whether it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id.*

If the district court has jurisdiction, the referral of the case to the bankruptcy court is governed by 28 U.S.C. § 157. *See Wood*, 825 F.2d at 94-95 (having determined that jurisdiction under § 1334 existed, the court next analyzed "the placement of that jurisdiction" under § 157); *see also In re Cary Metal Prod., Inc.*, 158 B.R. 459, 464 (N.D. Ill. 1993), *aff'd sub nom. Zerand-*

*Bernal Grp., Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994) (§ 157 "merely creates a statutory distinction between core and non-core proceedings, thereby restricting the power of bankruptcy courts to adjudicate the latter," and "does not enlarge the scope of the bankruptcy court's jurisdiction under § 1334.").

Under 28 U.S.C. § 1334(c)(1), a district court may, "in the interest of justice, or in the interest of comity with State courts or respect for State law," abstain from hearing a particular proceeding "arising under title 11 or arising in or related to a case under title 11." *See also* 28 U.S.C. § 1452 (entitled "Removal of claims related to bankruptcy cases" and permitting the remand of a removed claim or cause of action on "any equitable ground"); *In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996).

## 2. The Estate, Automatic Stay, and Permanent Injunction

The filing of a bankruptcy petition creates an estate including "all legal or equitable interests of the debtor in property as of the commencement of the case." *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). Property acquired after the filing of a bankruptcy petition, however, generally does not become part of the estate. *Id.*

11 U.S.C. § 362 provides for an "automatic stay" upon the filing of a bankruptcy petition; this provision provides for a "broad stay of litigation, lien enforcement and other actions, judicial or otherwise, that are attempts to enforce or collect prepetition claims," and it further stays "a wide range of actions that would affect or interfere with property of the estate, property of the debtor or property in the custody of the estate." 3 Collier on Bankruptcy ¶ 362.01 (2018). Legal actions on claims that arise after the commencement of a bankruptcy case are generally not stayed. 3 Collier on Bankruptcy ¶ 362.03(3)(c) (2018).

Unless relief is granted earlier by the court, the stay "of an act against property of the estate" expires when the property is no longer property of the estate; other stays expire at the earlier of the time that (1) the case is closed, (2) the case is dismissed or (3) the debtor receives a discharge. 3 Collier on Bankruptcy ¶ 362.06 (2018). When a debtor receives a discharge, the automatic stay is replaced by a permanent injunction under 11 U.S.C. § 524(a), which prohibits acts or legal proceedings to collect a discharged debt as a personal liability of the debtor but generally does not prevent enforcement of liens that survive the bankruptcy case. 3 Collier on Bankruptcy ¶ 362.06(2).

## C. Application

At the heart of this case is a disagreement about the scope and subject matter of the state court suit. Appellants characterize the suit as "attacking the court approved [t]rustee sale" or "question[ing]. . . the actions of the trustee and the bankruptcy court," emphasize that a debtor is "not responsible for the actions taken by a trustee pursuant to court order during the administration of the bankruptcy estate," fault the state court petition for "conveniently fail[ing] to mention" the discharge in bankruptcy or the actions Abide and Lemoine took, contend that allowing remand will "allow the state court to question whether the bankruptcy court had made the correct decision and whether [Abide] bears responsibility for those decisions," and "object to being forced to defend in state court, the actions of the [t]rustee and the [bankruptcy court] itself." (Doc. 16 at 6, 9, 13-16). The bankruptcy court rejected the aforementioned characterizations as "remarkable," observing, *inter alia*, Appellees' failure to name Abide as a defendant or seek the bankruptcy court's permission to do so. (Hrg. Tr. at 35). The bankruptcy court ruled that the state court petition "attack[ed] the debtors only and attack[ed] only their conduct postpetition." (*Id.*).

After reviewing the state court petition and the proceedings before the bankruptcy court, this Court agrees with Appellees. The state court petition challenges only Duncan and Simoneaux's actions in allegedly mismanaging or diminishing the assets of LA-1, not anything that Abide or the bankruptcy court did. Adversary Proceeding, Doc. 1-1 at 7-9. Abide is not named as a party in that suit and, as the bankruptcy court correctly noted, leave of court would likely have been required to so name her. (Hrg. Tr. at 35); *see also Villegas v. Schmidt*, 788 F.3d 156, 158 (5th Cir. 2015) (leave of court generally required before bringing suit against bankruptcy trustee). Appellees have also repeatedly disclaimed any intent to seek rescission of the sale. (Doc. 18 at 5-6).

Similarly, Appellants argue that the state court petition "cites alleged conduct of [Duncan and Simoneaux] as far back as October 22, 2015," (Doc. 16 at 10), but, as the Court noted *supra*, that date is described in the state court petition as the date on which LA-1 was "created," not the date on which any of the actions actually at issue in the state court suit occurred. The bankruptcy court correctly rejected the advancement of that date as a basis for jurisdiction as "a red herring." (Hrg. Tr. at 34-35). Moreover, Appellees have repeatedly and expressly limited their claims to post-petition conduct and set forth in fairly specific terms the conduct giving rise to their claims. Adversary Proceeding, Doc. 1-1 at 7-9; Bankruptcy Petition, Docs. 116 & 116-1. The bankruptcy court did not err in concluding that the state court suit was so delimited. Whether the state court suit is likely to succeed in light of its limited scope is generally beyond the scope of the Court's inquiry at this stage. 1 Collier on Bankruptcy ¶ 3.01(3)(e)(ii) (2018).

Of course, "related to" jurisdiction sweeps broadly, and can encompass even attenuated, hypothetical effects of litigation. *In re Spillman Dev. Grp., Ltd.*, 710 F.3d at 305. However, considering the posture of this case, this Court agrees with the bankruptcy court that jurisdiction

does not exist. As set forth in the numerous cases and treatises cited previously, property that has left the estate typically loses any relationship to the bankruptcy case. 1 Norton Bankr. L. & Prac. 3d § 4:103 (2018); *In re Lemco Gypsum, Inc.*, 910 F.2d at 789; *In re Hall's Motor Transit Co.*, 889 F.2d at 522; *Matter of FedPak Sys., Inc.*, 80 F.3d at 214. Here, the sale of Duncan and Simoneaux's interest in LA-1 was approved, and indeed Duncan and Simoneaux received a discharge, months before the state court suit was filed. Additionally, since the state court suit is based on post-petition conduct and is against Duncan and Simoneaux, the claims themselves were never part of Duncan and Simoneaux's estate. (*See* Hrg. Tr. at 38). This understanding is consistent with the bankruptcy court's order of sale, which preserved "full substitution and subrogation to all rights and actions of warranty against all preceding owners, vendors, or mortgagors of the property[.]" Bankruptcy Petition, Doc. 65. *Wood* is also distinguishable on this basis: therein, the Fifth Circuit ruled that a suit had a "potential effect" on the estate "[t]o the extent that the debtors' interest in [a] clinic, their stock holdings, or their withdrawals are now property of the estate." 825 F.2d at 93-94.

Appellants' arguments concerning 28 U.S.C. § 157 do not alter the overall calculus concerning subject matter jurisdiction because this section does not provide an independent basis for jurisdiction beyond that available via 28 U.S.C. § 1334. *See Wood*, 825 F.2d at 94-95; *In re Cary Metal Prod., Inc.*, 158 B.R. at 464; *see also In re TMT Procurement Corp.*, 764 F.3d 512, 527 (5th Cir. 2014) (debtors' argument that jurisdiction existed because orders "deal[t] with core proceedings" under § 157 "muddie[d] the water somewhat because before a court can decide whether an action is a core or a non-core proceeding, it must first determine whether subject-matter jurisdiction under § 1334 even exists"; debtors "confuse[d] the argument by putting the matter of placement of jurisdiction (core versus non-core proceedings) before the matter of the existence of

subject-matter jurisdiction"). Therefore, the bankruptcy court properly determined that jurisdiction was lacking.

For substantially similar reasons, the bankruptcy court correctly denied the Motion for Contempt and Sanctions, as the state court suit was not filed in violation of the automatic stay or injunction. (Hrg. Tr. at 22-24).

After finding that it lacked jurisdiction, the bankruptcy court found "discretional" or "permissive" abstention under 28 U.S.C. § 1334(c)(1) "appropriate." It is unclear that this ruling was necessary or warranted given the bankruptcy court's finding that it lacked "related to" jurisdiction. *See* 28 U.S.C. § 1334(c)(1) (bankruptcy court may abstain from hearing a proceeding "arising under title 11 or arising in or related to a case under title 11"); PERMISSIVE ABSTENTION, Black's Law Dictionary (10th ed. 2014) (permissive abstention is "[a]bstention that a bankruptcy court can, but need not, exercise in a dispute *that relates to the bankruptcy estate* but that can be litigated, or is being litigated, in another forum." (emphasis added)); *Archer v. Nissan Motor Acceptance Corp.*, 324 F. Supp. 2d 805, 809 (S.D. Miss. 2004) (doctrines of equitable remand and discretionary abstention provide that, "with respect to actions over which subject matter jurisdiction exists by way of bankruptcy," the district court may find that remand or abstention is appropriate). If the bankruptcy court had erred in its jurisdictional assessment, however, this Court would likely find permissive abstention an appropriate alternative basis for affirmance. *See In re Gober*, 100 F.3d at 1206-07 (upholding decision to abstain, although bankruptcy court did not indicate statutory provision under which it was abstaining or offer "any rationale for abstention in its judgment," where federal question had been resolved, claims existed "wholly outside of bankruptcy," and there was no basis for federal jurisdiction outside of 28 U.S.C. § 1334(b)). In any event, whether justified by lack of jurisdiction or by permissive abstention,

remand was an appropriate course of action. *See, e.g., The CIT Grp./Equip. Fin., Inc. v. BDO Seidman, LLP*, 2009 WL 2171231, at *4 & n.5 (W.D. Pa. July 21, 2009) (finding "related to" jurisdiction lacking and remanding before considering arguments regarding "the mandatory abstention rule and equitable considerations").

## IV. CONCLUSION

For reasons set forth above, the bankruptcy court's orders are hereby AFFIRMED.

Signed in Baton Rouge, Louisiana, on July 26, 2018.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**